**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Candice Wilhelm, individually and on behalf of similarly situated individuals, | |
| Plaintiff, | Case No. 1:23-cv-14906 |
| v. | Hon. Manish S. Shah |
| BAM Trading Services, Inc., | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND DISMISS FOR FORUM NON CONVENIENS**

**TABLE OF CONTENTS**

        **Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

I.     The Binance.US Platform ........................................................................................... 2

II.    The Binance.US Terms of Use Include a Binding Arbitration Agreement .......................... 2

III.   Plaintiff Agreed to the Binance.US Terms of Use .............................................................. 5

IV.   Notwithstanding the Arbitration Agreement, Plaintiff Sued Defendant in Court ............... 7

ARGUMENT ......................................................................................................................... 7

I.     The FAA Requires Enforcement of the Parties' Agreement to Arbitrate ........................... 7

II.    Plaintiff Agreed to the Arbitration Provision ....................................................................... 8

III.   The Parties Clearly and Unmistakably Agreed to Delegate Questions of Arbitrability to the Arbitrator ........................................................................................... 10

IV.   Even Absent a Delegation Clause, Plaintiff's Claims Must Be Arbitrated ...................... 12

CONCLUSION ..................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allstate Ins. Co. v. Certain Underwriters at Lloyd's, London*,
2006 WL 8460938 (N.D. Ill. June 9, 2006) .................................................................................2

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) ...................................................................................................................10

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ...................................................................................................12

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023) .....................................................................................................................2

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) .....................................................................................................................8

*DiLorenzo v. Valve & Primer Corp.*,
347 Ill. App. 3d 194 (1st Dist. 2004) ..........................................................................................9

*Donovan v. Rrl Corp.*,
26 Cal. 4th 261 (2001) .................................................................................................................9

*Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare Servs, Inc.*,
7 F.4th 555 (7th Cir. 2021) .........................................................................................................7

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018) .................................................................................................................8

*Fischer v. Instant Checkmate LLC*,
2021 WL 3033586 (N.D. Ill. July 19, 2021) ....................................................................8, 9, 10

*Fish v. Tesla, Inc.*,
2022 WL 1552137 (C.D. Cal. May 12, 2022) ............................................................................9

*Gore v. Alltel Commc'ns, LLC*,
666 F.3d 1027 (7th Cir. 2012) ...............................................................................................8, 13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019) ............................................................................................................8, 10

*Hires Parts Serv., Inc. v. NCR Corp.*,
859 F. Supp. 349 (N.D. Ind. 1994) .............................................................................................1

i

*Kashkeesh v. Microsoft Corp.*,
    2023 WL 4181226 (N.D. Ill. June 26, 2023) ................................................................. 7, 13

*Kaufman v. Am. Exp. Travel Related Servs. Co., Inc.*,
    2008 WL 687224 (N.D. Ill. Mar. 7, 2008) ............................................................................ 9

*Keifer Specialty Flooring, Inc. v. Tarkett, Inc.*,
    174 F.3d 907 (7th Cir. 1999) ............................................................................................ 13, 14

*Miracle-Pond v. Shutterfly, Inc.*,
    2020 WL 2513099 (N.D. Ill. May 15, 2020) ....................................................................... 9, 10

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ............................................................................................................. 13

*Noe v. Smart Mortg. Centers, Inc.*,
    2021 WL 4283027 (N.D. Ill. Sept. 21, 2021) ......................................................................... 9

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ........................................................................................................... 8, 10

*Sanchez v. CleanNet USA, Inc.*,
    78 F. Supp. 3d 747 (N.D. Ill. 2015) ...................................................................................... 14

*Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*,
    553 F. Supp. 3d 452 (N.D. Ill. 2021) .................................................................................... 12

*Tel. Invs. USA, Inc. v. Lumen Techs., Inc.*,
    2022 WL 2828751 (N.D. Ill. July 20, 2022) .................................................................... 11, 12

*Tinder v. Pinkerton Sec.*,
    305 F.3d 728 (7th Cir. 2002) .................................................................................................. 8

**Statutes**

9 U.S.C §§ 1–16 ............................................................................................................. 1, 7, 8, 13

Cal. Civ. Code §§ 1550, 1565 ................................................................................................... 9

**Other Authorities**

AAA Consumer Arbitration Rules (eff. Sept. 1, 2014), *available at*
    https://adr.org/sites/default/files/Consumer-Rules-Web_0.pdf (last accessed
    Dec. 13, 2023) ........................................................................................................................ 3

**INTRODUCTION**

Plaintiff Candice Wilhelm's complaint must be dismissed because it never should have been filed in any court. For more than two years, Plaintiff has used Defendant BAM Trading Services, Inc.'s ("BAM") online trading platform Binance.US to buy and sell digital assets. To do so, she affirmatively consented to BAM's Terms of Use, which contain an arbitration provision that plainly requires any dispute relating to the platform or other services offered by BAM to be resolved through arbitration. The Federal Arbitration Act requires this Court to enforce the parties' arbitration agreement and dismiss Plaintiff's claims.

There is no question that the parties agreed to the arbitration provision in the Terms of Use. That arbitration provision "clearly and unmistakably" delegates all remaining questions of arbitrability to the arbitrator. As a result, the Court must dismiss the complaint in favor of arbitration.

Even if the Court declined to enforce the delegation provision (and it should not), Plaintiff still must arbitrate her claims. All claims asserted in the complaint relate to biometric information allegedly collected from Plaintiff in violation of the Illinois Biometric Information Privacy Act so she could register for, access, and conduct trades on the Binance.US platform. These claims fall squarely within the arbitration provision because they relate to the platform and to services provided by BAM.

Plaintiff violated a binding arbitration agreement when she filed her complaint. Federal law mandates that the Court enforce that agreement, and BAM respectfully requests that the Court comply with this mandate and dismiss the complaint in its entirety.[1]

---

[1] BAM also seeks attorneys' fees and costs associated with preparing this motion, as Plaintiff has no good faith basis to assert that she is not subject to a binding arbitration agreement governing the claims in her complaint. *See Hires Parts Serv., Inc. v. NCR Corp.*, 859 F. Supp. 349, 355 (N.D. Ind. 1994) ("The law is clear that in suits to compel one party to submit to arbitration or abide by an award, fees are generally awarded if the defaulting party acted without

# BACKGROUND[2]

## I. The Binance.US Platform

Defendant BAM operates Binance.US, an online platform that supports the trading of digital assets. Blodgett Decl. ¶ 7.[3] The platform launched in 2019. *Id.* ¶ 8. Today, it offers digital asset trading and other services to U.S. residents in nearly every state and territory. *Id.*

Plaintiff Candice Wilhelm created a Biannce.US account on February 13, 2021, and regularly traded digital assets on the platform for more than two years. *Id.* ¶ 25. She made her last trade and withdrawal from her account as recently as May 2023. *Id.* ¶ 62. Since then, she has continued to access her Binance.US account, even after filing the present complaint. *Id.* To this day, she maintains an account on the platform. *Id.* ¶ 63.

## II. The Binance.US Terms of Use Include a Binding Arbitration Agreement

The Binance.US Terms of Use ("Terms of Use") require all users and BAM to arbitrate any dispute related to the user's access to or use of the Binance.US platform or the "Services" BAM provides. *Id.* ¶ 9.[4] The "Services" subject to this requirement are defined broadly to include "the

---

justification or if the party resisting arbitration did not have a 'reasonable chance to prevail.'") (*citing Chauffeurs, Teamsters and Helpers, Local No. 765 v. Stroehmann Brothers*, 625 F.2d 1092, 1094 (3d Cir. 1980)); *see also, e.g.*, *Allstate Ins. Co. v. Certain Underwriters at Lloyd's, London*, 2006 WL 8460938, at *4 (N.D. Ill. June 9, 2006) (awarding fees and costs incurred for prosecution of motion to compel arbitration).

[2] The parties have conferred and disagree regarding the applicability of the arbitration agreement to Plaintiff's claims. BAM requested that Plaintiff consent to arbitration of her claims, and Plaintiff declined. While Plaintiff disputes that the claims asserted in the complaint must be submitted to arbitration, the parties agree that the issue of where those claims will be decided—in this Court or before an arbitrator—should be resolved prior to briefing the merits of those claims. Therefore, the parties agree to defer briefing on any arguments challenging the sufficiency of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) until after the motion to compel arbitration has been resolved. BAM reserves all, and does not waive any, arguments or defenses available to it under Rule 12(b)(6). This approach is consistent with the recent U.S. Supreme Court decision in *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) (holding that a district court must stay its proceedings while an interlocutory appeal on arbitrability is ongoing).

[3] Citations to "Blodgett Decl." are to the *Declaration of Christopher Blodgett In Support of Defendant's Motion to Compel Arbitration and Dismiss for Forum Non Conveniens*. Citations to "Ex. _" are to the exhibits attached to the Blodgett Declaration.

[4] The Binance.US Terms of Use in effect at the time Plaintiff filed her complaint on September 11, 2023 were the Terms of Use last updated on August 21, 2023. *See* Ex. 1. Therefore, this motion applies the August 21, 2023 Terms of Use as the operative Terms of Use.

2

Platform … which provides Digital Asset . . . trading services" (i.e., Binance.US), the content on BAM's website or mobile app, and "any other services that BAM may make available, directly or indirectly, from time-to-time." *Id.* ¶ 10.

>   The Terms of Use include a straightforward and binding arbitration provision:

>> BAM and You [the prospective user] agree that any dispute or controversy arising out of or relating to these Terms or the Services, including, but not limited to, legal and equitable claims, federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation or any other legal theory, shall be resolved through binding arbitration on an individual basis (except as specifically noted …). Arbitration shall be conducted in accordance with the rules of the American Arbitration Association ("AAA"), Consumer Arbitration Rules.

*Id.* ¶¶ 14–15. The Terms of Use have been updated at various times since the platform's launch. Every version of the Terms of Use in effect since Plaintiff created a Binance.US user account has included a binding arbitration provision with similar language. *Id.* ¶¶ 35–54.

>   The Terms of Use also contain a delegation provision, which requires that all threshold issues relating to the validity and scope of the arbitration provision be resolved in arbitration:

>> **Delegation.** Any dispute between BAM and You regarding the construction, interpretation, or application of this arbitration provision, including the enforceability, severability, revocability, scope, or validity of this arbitration provision, shall be decided by an arbitrator and not by a court or judge.

*Id.* ¶ 16. The rules of the American Arbitration Association ("AAA") incorporated into the arbitration provision itself also explicitly delegate authority to decide these threshold issues of arbitrability to an arbitrator instead of a court. *See* AAA Consumer Arbitration Rules (eff. Sept. 1, 2014), R-14(a).[5] As with the arbitration provision, every version of the Terms of Use in effect

---

[5] R-14(a) provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Consumer Arbitration Rules (eff. Sept. 1, 2014), *available at* https://adr.org/sites/default/files/Consumer-Rules-Web_0.pdf (last accessed Dec. 13, 2023).

3

since Plaintiff registered to use the Binance.US platform has included an explicit delegation provision and/or incorporated AAA rules that provide for such delegation. Blodgett Decl. ¶ 36. Every version has also included a class action waiver displayed in all caps and bold font immediately after the arbitration provision. *Id.* ¶ 17.[6]

The Terms of Use prominently flag the arbitration provision, delegation provision, and class action waiver as "important" terms for Binance.US users on the first page:

> Please read these Terms, our Disclosures, Privacy Policy, and Trading Rules and any other terms referenced in this document carefully. The Terms you see below are important because they:
>
> **Please note:** The availability of BAM Services are dependent on the availability of partners to support them and thus certain Services may or may not be offered at any time based on partner availability. For more information about the BAM Services currently offered, please see here.
> - Outline your legal rights;
> - Explain the rights you give to BAM Trading, BAM Management US Holdings, Inc., and to BAM Management US Holdings, Inc.'s other subsidiaries (collectively, "BAM") when you use our Services;
> - Describe the rules you must follow when using our Services;
> - Contain a class action waiver and an agreement to resolve any disputes that may arise by arbitration; and
> - Contain a clause that delegates decisions regarding the interpretation and application of the arbitration clause to an arbitrator and not to a court or judge.

Ex. 1 at 1 (highlighting added). On page two, the Terms of Use remind the user again, in all caps and bold font, that the agreement includes an arbitration provision and class action waiver:

> PLEASE BE AWARE THAT THESE TERMS CONTAIN PROVISIONS REGARDING THE RESOLUTION OF DISPUTES BETWEEN YOU AND BAM, INCLUDING AN AGREEMENT TO ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS, THAT ALL DISPUTES BETWEEN YOU AND BAM SHALL BE RESOLVED BY BINDING ARBITRATION. THESE TERMS ALSO CONTAIN A WAIVER OF YOUR RIGHT TO A JURY TRIAL AND A WAIVER OF YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION. PLEASE READ THESE SECTIONS OF THE TERMS CAREFULLY.

Blodgett Decl. ¶ 12.[7]

---

[6] Ex. 1 at 37; Ex. 3 at 18–19; Ex. 4 at 9; Ex. 5 at 30–31; Ex. 6 at 32; Ex. 7 at 50–51; and Ex. 8 at 37.

[7] The "exceptions" referenced in this provision relate to the parties' rights regarding consolidated arbitration proceedings—as opposed to arbitration on an individual basis, which may be implemented in BAM's sole discretion

Below this reminder, a user-friendly "Table of Contents" outlines all the terms to which the user and BAM agree in orange hyperlink font. Ex. 1 at 2–3. This Table of Contents includes hyperlinks directly to the "**Arbitration**" and "**Class Action Waiver**" provisions of the Terms of Use. Blodgett Decl. ¶ 13. Following the "Table of Contents," a provision labeled "Binding Contract" explains to prospective users that the "Terms form a binding contract between you and BAM," and states: "Please read these Terms carefully." *Id*. ¶ 22.

Finally, the Terms of Use establish how amendments become effective. Specifically, the parties agree that BAM "may amend, supplement, and/or replace" the Terms of Use "by posting on the Website or emailing to [the user] the revised terms and conditions, and the revised terms and conditions shall be effective at such time." *Id*. ¶ 23. Every version of the Terms of Use in effect since Plaintiff registered to use the Binance.US platform has included nearly identical language governing amendments. *See* Ex. 1 at 33; Ex. 3 at 16; Ex. 4 at 8; Ex. 5 at 1, 27; Ex. 6 at 1, 28; Ex. 7 at 2, 46; and Ex. 8 at 2, 33.

### III. Plaintiff Agreed to the Binance.US Terms of Use

Since its launch, the Binance.US platform has required prospective users to do two things to create an account: (1) enter an email address and password, and (2) affirmatively check a box stating, in pertinent part, "I have read, understand, and agree to the **Binance.US Terms of Use**," with a hyperlink to the Terms of Use in effect on the date the account is created. *Id*. ¶¶ 19–20. When Plaintiff registered her account in February 2021, she was presented with the October 20, 2020 Terms of Use in effect at the time ("October 2020 Terms") and affirmatively checked the box to assent to those terms. *Id*. ¶ 25. In doing so, Plaintiff agreed that the October 2020 Terms

---

"in the event that [the] claim[s] in an arbitration substantially implicated or related to the rights of, or claims by, other BAM customers who have also initiated arbitration against BAM[.]" Ex. 1 at 36.

"form[ed] a binding contract between [her] and BAM" (Ex. 3 at 2), and that BAM could "amend, supplement, and/or replace" those terms "by posting on the Website or emailing to [Plaintiff] the revised terms and conditions, and the revised terms and conditions shall be effective at such time" (*id.* at 16). The October 2020 Terms provided further that if Plaintiff did not agree to such amendment, her "sole and exclusive remedy" was to terminate her use of the platform and close her account. *Id.*

The Terms of Use were amended six times between the time Plaintiff created a Binance.US account and the date she filed her complaint. *Id.* ¶¶ 25–34. In each instance, BAM posted the updated Terms of Use to the Website. *Id.* ¶ 55. In most instances, BAM also sent a corresponding email containing the updated version of the Terms of Use to Plaintiff. *Id.* ¶¶ 56–60. Plaintiff has never closed her Binance.US account. *Id.* ¶ 63. Before the August 21, 2023 update to the Terms of Use, BAM sent Plaintiff an email notification of the update, which explicitly stated: "By continuing to use the Binance.US platform from August 21, 2023 onward, you agree and will be subject to the updated Terms of Use." *Id.* ¶ 60; Ex. 10. Plaintiff accessed the Binance.US platform after the August 21, 2023 Terms of Use became effective—on August 25, 2023, on September 16, 2023, on September 26, 2023, and again on October 23, 2023. Blodgett Decl. ¶¶ 62.[8]

Plaintiff has agreed to the August 21, 2023 Terms of Use, including the binding arbitration provision, delegation provision, and class action waiver therein.

---

[8] Plaintiff affirmatively checked a box to assent to the Terms of Use a second time on October 12, 2022. Blodgett Decl. ¶ 26. At that time, she was presented with and assented to the September 7, 2022 Terms of Use. *Id.* ¶ 43. As in February 2021, Plaintiff agreed again that the Terms of Use formed "a binding contract" between her and BAM, that BAM could amend the terms effective immediately by posting the updated version to the website or emailing it to Plaintiff, and that her "sole and exclusive" remedy if she did not agree to the amended terms was to terminate her account. Ex. 6 at 3, 28. Plaintiff's last trade on the platform was on May 18, 2023, after the December 7, 2022 Terms of Use went into effect. Blodgett Decl. ¶ 62. The arbitration provision, delegation provision, and class action waiver in the September 7, 2022 Terms of Use and December 7, 2022 Terms of Use are not materially different from the same provisions in the August 21, 2023 Terms of Use applied to Plaintiff's claims in this motion. *See* Ex. 6 at 31-32; Ex. 7 at 50-51; Ex. 1 at 36-37. Each iteration requires Plaintiff to arbitrate the claims asserted in the complaint.

**IV.     Notwithstanding the Arbitration Agreement, Plaintiff Sued Defendant in Court**

Despite the parties' binding agreement to arbitrate all disputes related to Plaintiff's use of the Binance.US platform, Plaintiff brought this action in the Circuit Court of Cook County, asserting claims based on biometric information she allegedly provided to BAM to verify her identify, create her account, and begin trading on the platform.  *See, e.g.*, Compl. ¶¶ 19–21.  Specifically, Plaintiff alleges BAM unlawfully collected and disclosed Plaintiff's biometric data without proper notice or consent, and failed to have a written, publicly available policy governing the retention and destruction of such data, in violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*. ("BIPA").  *See id*. ¶¶ 22–28.  BAM timely removed the action to this Court, and now brings this motion to enforce the parties' arbitration agreement and dismiss Plaintiff's claims.

## ARGUMENT

Plaintiff's claims do not belong in this Court for the simple reason that they are subject to a valid and enforceable binding arbitration agreement.  Because Plaintiff agreed to arbitrate this dispute, the Court should dismiss this case pursuant to the doctrine of forum non conveniens.  *See Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare Servs, Inc.*, 7 F.4th 555, 560 (7th Cir. 2021).  Plaintiff can then pursue her claims, if at all, in the proper forum—arbitration.  Courts routinely enforce arbitration provisions similar to the one at issue here, including in actions asserting violations of BIPA.  *E.g., Kashkeesh v. Microsoft Corp.*, 2023 WL 4181226, at *2 (N.D. Ill. June 26, 2023) (requiring arbitration of plaintiffs' BIPA claims against Microsoft).  This Court should do the same.

**I.     The FAA Requires Enforcement of the Parties' Agreement to Arbitrate**

The Federal Arbitration Act ("FAA") governs the parties' agreement to arbitrate in the Binance.US Terms of Use.  9 U.S.C. §§ 1–16.  The FAA "embodies both a liberal federal policy

7

favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (internal quotation marks omitted). Accordingly, the FAA requires courts to rigorously enforce arbitration agreements according to their terms. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002). The FAA leaves "no place for the exercise of discretion by a district court[.]" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Rather, by its terms, the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (emphasis in original); *see also Fischer v. Instant Checkmate LLC*, 2021 WL 3033586, at *3 (N.D. Ill. July 19, 2021).

The same mandate applies to agreements to arbitrate arbitrability. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010). The U.S. Supreme Court has repeatedly "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 68–69. And the FAA operates on an agreement to arbitrate threshold issues "as it does on any other." *Id.* In other words, such "delegation" provisions are enforceable, and where one applies, the district court has "no power to decide the arbitrability issue[.]" *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

Here, as discussed below, the Court should find that (i) the parties agreed to the arbitration provision in the Binance.US Terms of Use; (ii) the parties agreed to delegate to the arbitrator the adjudication of threshold issues; and (iii) even setting aside the delegation provision, the parties' broad arbitration agreement encompasses the claims asserted in Plaintiff's complaint.

## II. Plaintiff Agreed to the Arbitration Provision

Plaintiff cannot escape the fact that she agreed to the arbitration provision in the Binance.US Terms of Use. The law is clear that a party must submit to arbitration any dispute she

8

has contractually agreed to arbitrate. *Fischer*, 2021 WL 3033586, at *3 (N.D. Ill. July 19, 2021) (citing *Gore*, 666 F.3d at 1032). Courts look to state law principles of contract formation to resolve the threshold question of whether such an agreement to arbitrate exists. *See Noe v. Smart Mortg. Centers, Inc.*, 2021 WL 4283027, at *1 (N.D. Ill. Sept. 21, 2021) (citing *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710–11 (7th Cir. 2019)). Here, the answer is the same under California or Illinois law: Plaintiff agreed to the arbitration provision.[9]

Under both California and Illinois law, the formation of a contract requires a mutual manifestation of assent and takes into consideration whether the consumer had actual or constructive notice of the terms of the agreement. *See Fischer*, 2021 WL 3033586, at *5 (applying Illinois law); *Donovan v. Rrl Corp.*, 26 Cal. 4th 261, 271, (2001) (citing Cal. Civ. Code §§ 1550, 1565). Courts have recognized that, under each state's laws, consumers can sufficiently manifest assent by either (i) digitally clicking that they agree with terms and conditions, or (ii) continually using a website after being put on notice of the website's terms. *See Miracle-Pond v. Shutterfly, Inc.*, 2020 WL 2513099, at *4 (N.D. Ill. May 15, 2020) (applying Illinois law); *Fish v. Tesla, Inc.*, 2022 WL 1552137, at *4 (C.D. Cal. May 12, 2022).

Plaintiff clearly manifested assent to the arbitration agreement in the Binance.US Terms of Use when she affirmatively clicked that she agreed to the Terms of Use, including the arbitration provision, and then continued to use the platform after being notified of amendments to those terms. When Plaintiff initially assented to the Terms of Use in February 2021, she expressly agreed

---

[9] The August 21, 2023 Terms of Use, and all versions of the Terms of Use in effect since Plaintiff created her account in February 2021, are governed by California law. Ex. 1 at 35; *see also* Ex. 3 at 18; Ex. 4 at 9; Ex. 5 at 29; Ex. 6 at 30; Ex. 7 at 49; Ex. 8 at 35. To the extent there is any dispute as to the validity of the Terms of Use themselves, the applicable conflict-of-laws test likely points to application of Illinois law. *See, e.g.*, *Kaufman v. Am. Exp. Travel Related Servs. Co., Inc.*, 2008 WL 687224, at *4 (N.D. Ill. Mar. 7, 2008) (Illinois's "most significant relationship" test resulted in application of Illinois law where place of negotiation, execution or contracting, performance, and one party's residence and domicile was in Illinois). As explained herein, the Court need not resolve the conflicts-of-law issue, if raised, because the outcome is the same regardless of which state's law applies.

that "any dispute or controversy arising out of or relating to the[] Terms shall be settled through binding arbitration." Ex. 3 at 18. At that time, she also agreed that BAM could amend the Terms of Use (including the arbitration provision) by posting the updated version to the website and/or sending it to her via email, and that her "sole and exclusive recourse" if she did not agree to those amendments was to stop using the platform and close her account. *Id.* at 16. Each time the Terms of Use were updated after February 2021, the updated version was prominently posted on BAM's website and, in most instances, also sent to Plaintiff via email. Blodgett Decl. ¶¶ 55–56. And after the updated version was posted to the website and sent to her via email, Plaintiff continued to access her account and trade on the platform, including after the August 21, 2023 updates went into effect. *See, e.g., id.* ¶¶ 61–62. To this day, Plaintiff has not closed her Binance.US account. *Id.* ¶ 63. In fact, she continues to use it. *Id.* ¶¶ 62–63. Thus, by way of her initial affirmative acceptance of the arbitration agreement and continued use of the platform, Plaintiff manifested her assent to the arbitration agreement and related provisions, as amended effective August 21, 2023. *See, e.g., Shutterfly, Inc.*, 2020 WL 2513099, at *4–6; *Fischer*, 2021 WL 3033586, at *6.

### III. The Parties Clearly and Unmistakably Agreed to Delegate Questions of Arbitrability to the Arbitrator

Because the parties' arbitration agreement includes a delegation provision, there is nothing more for this Court to do but dismiss Plaintiff's claims in favor of arbitration. An arbitrator—not the Court—must decide the remaining threshold questions of arbitrability where there is "clear and unmistakable evidence" the parties agreed to arbitrate those issues. *Henry Schein*, 139 S. Ct. at 530 ("a court may not decide an arbitrability question that the parties have delegated to an arbitrator"); s*ee also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *Rent-A-Ctr.*, 561 U.S. at 68–70. When parties make a "clear and unmistakable" delegation, the

10

court "possesses no power to decide the arbitrability issue." *Tel. Invs. USA, Inc. v. Lumen Techs., Inc.*, 2022 WL 2828751, at *4 (N.D. Ill. July 20, 2022) (quoting *Henry Schein*, 139 S. Ct. at 529).

Courts find "clear and unmistakable" evidence of intent to delegate under two, independent circumstances: (1) where a delegation clause explicitly confers authority to decide issues of arbitrability to the arbitrator, and (2) where the arbitration agreement refers to or incorporates the AAA rules. *Id*. at *4 (citations omitted). Both circumstances exist here.

*First*, the August 21, 2023 Terms of Use clearly state that an arbitrator, not the court, must decide all questions relating to the scope or validity of the arbitration provision:

> **Delegation**. Any dispute between BAM and You regarding the construction, interpretation, or application of the arbitration provision, including the enforceability, severability, revocability, scope, or validity of this arbitration provision, shall be decided by an arbitrator and not by a court or judge.

Blodgett Decl. ¶ 54.[10] Courts are clear that such plain language constitutes an explicit conferral of authority to the arbitrator. *See, e.g.*, *Lee v. Uber Techs., Inc.*, 2022 WL 2828751, 891 (N.D. Ill. 2016) (agreement providing that "disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision[ ] ... shall be decided by an Arbitrator and not by a court or judge" was "clear and unmistakable" evidence of delegation); *Tel. Invs.*, 2022 WL 2828751, at *5 (agreement providing that "all controversies or claims arising out of or relating to this Agreement, or the interpretation or enforcement thereof, shall be settled by arbitration" was "clear and unmistakable" evidence of delegation). This language alone is sufficient to require arbitration of any remaining questions concerning Plaintiff's claims.

---

[10] The September 7, 2022 Terms of Use Plaintiff affirmatively assented to on October 12, 2022, and the December 7, 2022 Terms of Use in effect at the time Plaintiff last traded on the Binance.US platform, each contain a virtually identical delegation provision. *See* Blodgett Decl. at ¶¶ 45, 48.

*Second*, the arbitration provision in the Terms of Use refers to and incorporates the AAA rules. Specifically, the Terms of Use unambiguously require that any arbitration "shall be conducted in accordance with the rules of the American Arbitration Agreement ('AAA'), Consumer Arbitration Rules" (Blodgett Decl. ¶ 53), which in turn expressly delegate questions of arbitrability to the arbitrator. *See supra* at 3 & n.5. Therefore, the Court must defer all question of arbitrability to the arbitrator for the independent reason that the parties' agreement incorporates the AAA rules. *See, e.g.*, *Tel. Invs.*, 2022 WL 2828751, at *5 ("consistent with the 'consensus view' among federal courts, … the parties' agreement to arbitrate pursuant to AAA Rules also constitutes clear and unmistakable intent to delegate arbitrability"); *Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 458 (N.D. Ill. 2021) (citing various cases for the proposition that no district court in the Northern District has departed from the consensus view that incorporating "AAA's rules, or similar rules into a contract clearly and unmistakably delegates arbitrability to the arbitrator[]"); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015).

Indeed, every version of the Terms of Use in effect since Plaintiff created her Binance.US account in February 2021 has included an explicit delegation provision, incorporated the AAA rules, or both. Blodgett Decl. ¶ 36. As a result, no matter which iteration of the Terms of Use is reviewed, this Court has no discretion over whether Plaintiff's claims must be arbitrated. Only an arbitrator can make that decision.

## IV. Even Absent a Delegation Clause, Plaintiff's Claims Must Be Arbitrated

Even if the Court were to find no "clear and unmistakable" evidence of delegation exists (and it should not), Plaintiff must arbitrate the claims asserted in the complaint. Where no delegation provision applies, the court must engage in a two-part inquiry: (1) determine whether

12

a valid agreement to arbitrate exists, and (2) if so, whether that agreement encompasses the claims at issue. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627–28 (1985).

With respect to the first issue, the parties agreed to the arbitration provision in the Terms of Use. As explained above, Plaintiff manifested assent to the arbitration provision when she created a Binance.US account and then continued to access and use the platform after receiving notification the Terms of Use had been amended. *See supra* at 8–10. As a result, she is bound by the arbitration provision.

The arbitrability inquiry, therefore, turns on the second issue: whether the arbitration provision in the Terms of Use encompasses Plaintiff's claims. Under the FAA, once it is clear the parties agreed to arbitrate *some* issues between them, "any doubt concerning the scope of arbitration is resolved in favor of arbitration as a matter of federal law." *Gore*, 666 F.3d at 1032 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983)). "To this end, a court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* (quoting *Keifer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 999 (7th Cir. 1999)). This is not a close call here.

The arbitration provision in the Terms of Use requires arbitration of "any dispute or controversy arising out of or relating to" the Terms of Use or "Services" provided by BAM, which are defined broadly to include the Binance.US platform itself, any content on the BAM website or app, or "any other service" provided by BAM. Blodgett Decl. ¶¶ 9–10, 14. Plaintiff's claims are based on the alleged collection of her biometric information when she created an account so she could access and use the platform. *See, e.g.*, Compl. ¶¶ 19–28. She cannot seriously dispute these allegations relate to the platform or services provided by BAM. *See, e.g.*, *Kashkeesh*, 2023 WL

13

4181226, at *1 (implying that agreeing to a "Platform Access Agreement" that required arbitration of any dispute "arising out of or related to" the use of the Uber platform adequately encompassed the issue of biometric privacy). Moreover, courts have recognized that arbitration clauses like the one here that contain the phrase "arising out of or relating to" are "extremely broad" and "necessarily create a presumption of arbitrability.'" *Keifer Specialty Flooring*, 174 F.3d at 909; *see also Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 752–53 (N.D. Ill. 2015) (arbitration clause containing the phrase "arising out of or relating to" was "extremely broad" and applied to the claims at issue). The Court should apply this presumption here and compel Plaintiff to arbitrate her BIPA claims pursuant to the broad, binding arbitration provision she agreed to in the Terms of Service.

## CONCLUSION

For these reasons, the Court should find Plaintiff's claims are subject to the arbitration provisions of the Terms of Use, dismiss the complaint in its entirety under the doctrine of forum non conveniens, and award BAM its reasonable attorneys' fees and costs associated with preparing this motion (*see supra* at 1 n.1).

14

Dated: December 13, 2023							Respectfully submitted,

WINSTON & STRAWN LLP

By:	/s/ *Sean G. Wieber*
	Sean G. Wieber
	Whitney I. Adams
	WINSTON & STRAWN LLP
	35 W. Wacker Dr.
	Chicago, Illinois 60601
	Phone: 312-558-5600
	Fax: 312-558-5700
	swieber@winston.com
	wiadams@wiston.com

	Daniel T. Stabile (*pro hac vice*)
	WINSTON & STRAWN LLP
	200 S. Biscayne Blvd., Suite 2400
	Miami, FL 33131
	Phone: 305-910-0500
	Fax: 305-910-0505
	dstabile@winston.com

	*Attorneys for Defendant*
	*BAM Trading Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2023, I filed the foregoing document using the CM/ECF system and caused it to be sent via electronic mail to counsel for Plaintiff as follows:

Michael L. Fradin, Esq.
8 N. Court St. Suite 403
Athens, Ohio 45701
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com

James L. Simon
Simon Law Co.
11 ½ N. Franklin Street
Chagrin Falls, Ohio, 44022
Telephone: 216-846-8696
Email: james@simonsayspay.com

/s/ Sean G. Wieber
Sean G. Wieber
Whitney I. Adams
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, Illinois 60601
Phone: 312-558-5600
Fax: 312-558-5700
swieber@winston.com
wiadams@wiston.com

Daniel T. Stabile (*pro hac vice*)
WINSTON & STRAWN LLP
200 S. Biscayne Blvd., Suite 2400
Miami, FL 33131
Phone: 305-910-0500
Fax: 305-910-0505
dstabile@winston.com

*Attorneys for Defendant*
*BAM Trading Services, Inc.*